905 So.2d 1127 (2005)
Darlisha WESTLEY, Individually and on Behalf of her Minor Child, Diamond Lewis
v.
ALLSTATE INSURANCE COMPANY, Reliable Soil Co., Inc. and Elaine Peck.
No. 05-CA-100.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 2005.
*1129 Frank M. Buck, Jr., New Orleans, LA, for Plaintiff/Appellant.
Ronald K. Bell, New Orleans, LA, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and CLARENCE E. McMANUS.
THOMAS F. DALEY, Judge.
In this civil appeal, the plaintiff/appellant, Darlisha Westley, individually and on behalf of her minor child, Diamond Lewis, appeal the trial court's general damage award, failure to award all proven medical special damages and past lost wages, and to assess all costs to the defendants.
On May 1, 2001, Ms. Westley and her six-month-old daughter, Diamond Lewis, were involved in a motor vehicle accident, in which they were rear ended by a vehicle owned by Reliable Soil Company, Inc. ("Reliable") and operated by the defendant, Elaine Peck, the owner of Reliable, while stopped at the intersection of Third and Pollack streets.[1] The Motor Vehicle Crash Report filled out by the Officer R. Roy of the Kenner Police Department indicates that Ms. Peck[2] was cited for following too closely after she admitted to the officer that she stopped suddenly to make a left turn and was too close to avoid impact. Both vehicles sustained minor to moderate damage, and were able to be driven from the scene of the accident.
On April 11, 2002, Darlisha Westley, individually and on behalf of her minor child, Diamond Lewis[3], filed a Petition for Damages against defendants Allstate Insurance Company, and its insureds, Reliable Soil Company and Elaine Peck, after their amicable *1130 demand was refused.[4] The plaintiffs alleged that the sole and proximate cause of the accident was the negligence and fault of Ms. Peck, individually, and her employer, Reliable, under respondeat superior. Specifically, the plaintiffs alleged that Ms. Peck was negligent in following too closely; driving recklessly; and failing to see what should have been seen, post a proper lookout, use due care under the circumstances, and operate the vehicle in a careful and prudent manner. The plaintiffs, further, claimed that as a result of the accident, they suffered injuries to their minds and bodies entitling them to compensatory damages for disfigurement, and past and future physical and mental pain and suffering, medical expense, impairment of earning capacity, loss of enjoyment of life, hedonic damages, and disability.
In his April 24, 2004 deposition, Dr. William S. Berman, an expert of 20 years in the field of chiropractic medicine, testified that on May 2, 2001 he initially saw Darlisha Westley and that he saw her on a "pretty regular" basis through March of 2004. She missed some appointments for monetary reasons. During her first appointment she complained that her neck and left shoulder were bothering her since the accident. She reported no past history of complaints. He testified that Ms. Westley had cervical and left shoulder strains and sprains, as a result of the accident, that consequently caused scar tissue to develop in her neck and has continued to develop scar tissue in the musculature in and around her shoulder, which has limited her range of motion and led to the rapid onset of severe chronic symptoms. Dr. Berman testified that he released Ms. Westley from active therapy to supportive or maintenance care on November 9, 2001 because he felt she had reached her maximum medical improvement. She had ceased to improve any further in regard to what he could offer her, but continued to have intermittent symptomology, spasms in her neck and left shoulder, while at work for which he provided monthly maintenance or supportive care. He did believe, however, that she would have benefited from physical therapy on her shoulder. The total cost of the active therapy to help her reach maximum chiropractic improvement was $3,305.00, which included a narrative report. Dr. Berman testified that he has not been paid for these services. In addition, Dr. Berman intimated that he charged her a reduced fee of $15.00 per visit for Ms. Westley's maintenance care, because of her financial situation that caused her to have to pay out of pocket. Ms. Westley attended 30 maintenance or supportive care visits. She missed as many as four visits in a row, because of her financial situation. Dr. Berman testified that Ms. Westley's shoulder pain is going to be continuous, but does not prevent her from working as a domestic, although he has had to take her off of work on numerous occasions, at her request.[5] Dr. Berman testified that Ms. Westley's time off from work was needed for her to do her range of motion exercises at home and at the clinic, in order to prevent any further damage from work-related physical stress caused by domestic service. Dr. Berman testified that the negative MRI(s) for significant underlying pathology of Ms. Westley's *1131 cervical spine and left shoulder did not mean that she does not have an underlying injury. He opined that she had calcified tendonitis that would not be seen on an MRI.
At trial, Dr. Bradley Bartholomew, a neurosurgeon, testified that he saw Darlisha Westley on two occasions, September 20th and November 8th of 2001. He testified that during Ms. Westley's initial visit, she described her neck pain as non-activity related, occurring only every once in a while with no upper extremity symptoms. He also noted that she reported she had back pain, which had resolved under the treatment of Dr. Berman[6], a chiropractor. Ms. Westley had previously had MRI of her shoulder, which was interpreted as normal. Dr. Bartholomew ordered an MRI of her cervical spine, which was also interpreted as normal.[7] He diagnosed her with left sided neck pains to the left shoulder that came and went, left side neck spasms in the trapezius area, and cervical sprain or strain. He determined that Ms. Westley did not need a neck operation. He testified that on her last visit, it appeared that injury to her neck appeared to be resolving, and any follow up visits were recommended on an as need basis. He never saw her again. Dr. Bartholomew testified that generally a cervical sprain or strain takes three to six months to heal, but could become chronic. In addition, he agreed that the trauma from the accident was the cause of Ms. Westley's symptoms, and necessitated the appropriate reasonable medical care, i.e. conservative management treatment she received from Dr. Berman, especially since she was not a surgical candidate. Dr. Bartholomew testified that under the treatment of Dr. Berman, Ms. Westley received symptomatic relief, which cleared up her back pain and appeared to be making her neck pain less frequent.
Darlisha Westley, a twenty-seven year old mother of two children[8], testified that she is currently a stock clerk, at Winn Dixie[9], but at the time of the accident, she worked as a Custodian I in housekeeping at the Treasure Chest Casino, cleaning restrooms and the casino floor for $7.30 per hour. Ms. Westley testified that at the time she was rear-end by the defendant, Elaine Peck, she had made a complete stop at Pollack and Third, but had her left turn signal on because she was getting ready to make a left turn. She testified that the impact did not move the car even one inch, nor did it cause her body to hit anything inside of the car. She had her seat belt on and did not sustain any cuts and bruises. After the accident she got out of the car and told Ms. Peck, the other driver, that she would be okay because she was not experiencing any pain. She also told the investigating officer that she was not injured. The car she drove sustained damage to the rear bumper and the muffler assembly.[10] She went home after she left the scene of the accident and it was at that time she first felt pain in her left shoulder. She testified *1132 that she went to East Jefferson within ten to fifteen minutes of the accident.[11] She related to personnel at East Jefferson that her neck and back were hurting, but she testified that her shoulder was also hurting at that time. She was x-rayed and given prescriptions for medications[12] that she had filled and took. The day after the accident, she sought the services of Dr. Berman, at the recommendation of a co-worker.[13] At that time she informed Dr. Berman that her neck, back, and shoulder were hurting. Dr. Berman gave her therapy, which consisted of putting her on a stimulator and giving her hot packs and massages. In May of 2001, the first month of her treatment, she went in for this therapy three days a week, twelve or thirteen visits.[14] She described her pain level, at that time, as an eight.[15] In July, she only had three therapy appointments, in August only two therapy appointments, and only one visit per month in September, October, and November. She testified that the treatments helped, but did not make her pain go away, although she agreed that as of September her back pain had resolved. In addition, Dr. Berman restricted her job duties requiring her to stay away from work at the Treasure Chest for one week. Ms. Westley submitted the required paperwork for her week's leave, five work days, to Boyd Gaming. At the time, she was working eight hours a day, a total of forty hours a week. She testified that she did discuss with Dr. Berman, his decision to put her on maintenance care after November 9, 2001, which would consist of putting her on the stimulator and giving her massages. She attended maintenance care once a month from December of 2001 to March of 2004, a total of thirty visits, to treat her left shoulder, for which she paid out of pocket. She testified that the continuing flare-ups in her shoulder are on a pain level of five and that treatment from Dr. Berman relieves her symptoms. However, she admitted that she attends the maintenance treatment sessions every month, even when her shoulder does not hurt.
Elaine Peck testified that she was driving on Third Street, looked away for a minute, then looked back to see the car driven by Ms. Westley stopped, she applied her brakes, but still rear ended the other car. She claimed that the impact was minimal because she was not going very fast. In fact, she testified that the impact did not move Ms. Westley's car one inch. After the impact, she got out of the car and asked Ms. Westley if she was okay and Ms. Westley replied that she was fine. She claimed that Ms. Westley did not appear injured. Ms. Peck testified that because of the frontal impact the OnStar system in her car came on. The representative asked if she needed an ambulance, she replied no and asked that the police department be called. She testified that she sustained $400.00 in damages to the left front bumper of her Cadillac Deville causing the hood to push up.
*1133 On June 23, 2004, the trial court rendered a judgment in favor of the plaintiff, Darlisha Westley, and against the defendants, Elaine Peck and Allstate Insurance Company, in the amount of $6,399.00, $3,899.00 in special damages and $2,500.00 in general damages, plus legal interest from the date of judicial demand until paid, with each party to bear its own costs. The trial court found that the defendant, Elaine Peck, was one hundred percent at fault and the plaintiff suffered only minimal injuries, if any. The trial court in its Judgment and Reasons stated that it found the plaintiff's testimony to be unbelievable, because she testified that she did not see the accident occur, since she was at a complete stop looking straight ahead at oncoming traffic, but also testified that she saw her infant daughter's head whip forward and backward behind her, the direction in which the accident occurred. Also, the plaintiff testified that her vehicle did not move upon impact and that she was not jolted around in the vehicle as a result of the impact. In addition, the trial court noted that the plaintiff's reported injuries involving her neck, back, and shoulder were inconsistent. The trial court did not award a week of lost wages because the plaintiff immediately went back to work and did not take off from work until two weeks after the accident, which the court felt was not necessary. In addition, the trial court did not award damages for the maintenance care received by the plaintiff because she testified that the pain "comes and goes," but she went in for the treatment even when she was not in pain.
On appeal, the plaintiff/appellant, Darlisha Westley, raises four Assignments of Error alleging that the trial court: failed to award all proven medical special damages, abused its discretion in awarding general damages, failed to award past lost wages, and abused its discretion in failing to assess all costs of the proceedings to the defendants.
In her first and third Assignments of Error, the plaintiff/appellant argues that the trial court erred in failing to award damages for maintenance care and past lost wages. The plaintiff contends that the trial court erred in not awarding damages for maintenance care because she attended treatment even when she was not actually in pain. The plaintiff/appellant claims that she proved through the testimony of Dr. Berman and Dr. Bartholomew that the monthly maintenance treatments were necessary, even though she may not have been in pain on the particular date of her appointment. Dr. Berman testified that she needed maintenance care because she continued to have objective findings of spasm. He opined that the maintenance care was necessary to prevent a worsening of the plaintiff/appellant's continuing symptoms. The plaintiff/appellant claims that she is entitled to special damages for all medical expenses incurred for the treatment and evaluation of her injuries in the amount of $5,313.00. In addition, while the plaintiff/appellant does not specifically argue that the trial court erred in not awarding damages for past lost wages, she did, as previously noted, claim that her symptoms were continuing and that Dr. Berman found objective signs of spasm. The plaintiff/appellant claims that she proved that she continued to have continuous intermittent symptomology and spasms in her neck and left shoulder while at work for which Dr. Berman provided monthly maintenance or supportive care. Dr. Berman testified that while the plaintiff/appellant's shoulder pain did not prevent her from working, he has had to take her off work as needed for her to do her range of motion exercises at home and the clinic, in order to prevent any further damage from work-related physical stress.
*1134 The defendant/appellee, Allstate Insurance Company ("Allstate"), argues that the trial court was within its discretion in its award of damages to the plaintiff. Allstate claims that the trial court was correct in determining that the plaintiff's injuries, if any, should be limited to a shorter period of time. Allstate contends that the trial court correctly took into account the minimal property damage, the impact that did not cause the plaintiff's vehicle to move one inch, the physician's testimony that the plaintiff's injuries and subsequent treatment were inconsistent with this minor accident, the plaintiff's inconsistent testimony, and her attending treatment sessions when she was not in pain. In addition, Allstate argues that the trial court was correct in determining that the plaintiff was not entitled to lost wages because she immediately returned to work after the accident and her subsequent work release form did not indicate that she had any work limitations.
A plaintiff has the burden to prove with legal certainty each and every item of the damages claimed. Bates v. Willis, 613 So.2d 691, 695 (La.App. 5 Cir. 01/26/93). There is a causal presumption that:
[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
Robinson v. Franklin, 03-236, p. 2 (La. App. 5 Cir. 6/19/03), 851 So.2d 315, 316-317, citing Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757, 761.
However, this presumption is only appropriate when it has been established that plaintiff was healthy before the accident and there is a reasonable possibility of a causal connection between the plaintiff's accident and injury. Robinson v. Franklin, 851 So.2d at 317. A trial court's factual findings as to extent and duration of plaintiff's injury can only be modified, if the appellate court's review determines that the trial court's findings were clearly wrong or manifestly erroneous. Bates v. Willis, 613 So.2d at 694. The appellate court must review the entire record in order to determine whether the trial court's finding of fact was clearly wrong or manifestly erroneous. Meyer v. Southern Eagle Sales and Service, 03-848, p. 4 (La.App. 5 Cir. 12/30/03), 864 So.2d 745, 748. An appellate court may not reverse a trial court's finding of fact absent manifest error or unless it was clearly wrong. Id. See also, Lasyone v. Kansas City Southern R.R., 00-2628 (La.4/3/01), 786 So.2d 682, 688. An appellate court must determine whether the fact finder's conclusion was a reasonable one, not whether the trier of fact was right or wrong. Id. When there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. Williams v. Maritime, Inc., 04-625, p. 4 (La.App. 5 Cir. 11/30/04), 889 So.2d 1055, 1059, writ denied, 04-3226 (La.3/11/05), 896 So.2d 72. See also, Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Therefore, if the appellate court finds that the trial court's findings of fact are reasonable on review of the entire record, it may not reverse the judgment, even if it would have weighed the evidence differently were it the trier of fact. Meyer v. Southern Eagle Sales and Service, 864 So.2d at 748.
*1135 In the instant case, we find that the trial court was clearly wrong and, therefore, abused its discretion. The plaintiff/appellant proved that her disability resulted from the accident, i.e. she was in prior good health, since her symptoms of the disabling condition appeared and continuously manifested themselves after the accident. The uncontroverted medical evidence presented at trial proves that there is a reasonable possibility of causal connection between the accident and the plaintiff/appellant's disabling condition, which necessitated the medical care she received. Dr. Berman, an expert of twenty years in the field of chiropractic medicine, testified that the plaintiff/appellant had complaints of neck and left shoulder that bothered her since the accident and no history of similar complaints. He diagnosed her with cervical and left shoulder strains and sprains, as a result of the accident, that consequently caused scar tissue to develop in her neck, and has continued to develop scar tissue in the musculature in and around her shoulder, which has limited her range of motion and led to the rapid onset of severe chronic symptoms. Dr. Berman testified Ms. Westley was in active therapy from May 2, 2001 to November 9, 2001, when she was placed on to supportive or maintenance care because she had reached her maximum medical improvement, but had intermittent symptomology, spasms in her neck and left shoulder. Ms. Westley attended thirty maintenance or supportive care visits. Dr. Berman testified that the plaintiff/appellant's shoulder pain is going to be continuous and has required him to have her take off work on occasion in order for her to do her range of motion exercises at home and at the clinic to prevent any further damage from work-related physical stress. In addition, he testified that the negative MRI(s) for significant underlying pathology did not mean that she does not have an underlying injury. He opined that the plaintiff/appellant had calcified tendonitis that would not be seen on an MRI. Dr. Bartholomew, a neurosurgeon, testified that the plaintiff's described neck pain and reported back pain, which had resolved under the treatment of Dr. Berman, was the result of trauma from the accident and necessitated the appropriate reasonable medical care, i.e. conservative management treatment she received from Dr. Berman, especially since she was not a surgical candidate. He diagnosed her with left sided neck pains to the left shoulder that came and went, left side neck spasms in the trapezius area, and cervical sprain or strain. Dr. Bartholomew testified that under the treatment of Dr. Berman, Ms. Westley received symptomatic relief, which cleared up her back pain and appeared to be making her neck pain less frequent.
The plaintiff/appellant has proven that her injuries were a result of the accident and that her subsequent disabling condition necessitated the medical care she received, which included five days off from work to do her range of motion exercises at home and at the clinic in order to prevent any further damage from work-related physical stress. Therefore, she is entitled to the award of $5,313.00, in special damages, for the evaluation and treatment of her injuries, and $292.00, in lost wages.
In her second Assignment of Error, the plaintiff-appellant argues that the trial court erred in only awarding $2,500.00 in general damages because both of her treating physicians testified that she showed objective signs of spasm during her examinations because of strains and sprains sustained in the accident, which necessitated continued conservative treatment. The plaintiff/appellant claims that no medical evidence was presented by the *1136 defendants to refute these findings by her treating physicians. The plaintiff/appellant claims that $25,000.00 is a more appropriate award based on the objective medical findings of her continuing spasms and general damages awarded under similar circumstances.
As previously stated, Allstate argues that the trial court was within its discretion in its award of damages to the plaintiff. Allstate claims that the trial court correctly took into account the minimal property damage, the impact that did not cause the plaintiff's vehicle to move one inch, the physician's testimony that the plaintiff's injuries were inconsistent with this minor accident, the plaintiff's inconsistent testimony, her immediate return to work, and her lack of any work limitations.
General damage awards are reviewed under an abuse of discretion standard. Williams v. Maritime, Inc., 889 So.2d at 1059. Therefore, the role of the appellate court is to review the exercise of discretion by the trier of fact, and the adequacy of award should be determined by facts or circumstances particular to the case under consideration. Otillio v. Entergy Louisiana, Inc., 02-718, p. 4 (La.App. 5 Cir. 12/11/02), 836 So.2d 293, 296. In reviewing a general damage award, the appellate court must consider the particular facts of the plaintiff's injuries, and the effects of those injuries on the particular plaintiff. Williams v. Maritime, Inc., 889 So.2d at 1059. An appellate court may not overturn an award for general damages, unless, it is so out of proportion to the injury that it shocks the conscience. Moore v. Healthcare Elmwood, Inc., 582 So.2d 871, 879 (La.App. 5 Cir. 06/05/91). Consequently, an appellate court should rarely disturb an award of general damages because of the "great" discretion vested in the trier of fact, the non-specific standard for review, and since only when the award is, in either direction, beyond that which a reasonable trier of fact could assess should it increase or reduce award. Otillio v. Entergy Louisiana, Inc., 836 So.2d at 296. An appellate court may raise the award to the lowest reasonable amount or reduce it to the highest reasonable amount, only if articulable reasons are found to show that a reasonable trier of fact could not have awarded so much or so little, under all of the circumstances of the case. Williams v. Maritime, Inc., 889 So.2d at 1059.
In the instant case, if we apply the aforementioned principles, we find no abuse of discretion by the trial court and no basis upon which to disturb the award of general damages. The trial court found that the evidence presented at trial proved that the plaintiff sustained minimal damages, if any at all. While there was some conflicting testimony by Dr. Berman concerning the extent of the plaintiff's injury, the trial court was in the best position to assess the credibility of all the witnesses. The trial court apparently chose to rely on the testimony of Ms. Peck, and ignore the testimony of Dr. Berman regarding the extent of plaintiff's injuries, which suggested a chronic condition. Factual and credibility determinations made by the trier of fact should not be disturbed absent an abuse of discretion. Since we are unable to articulate any reasons why the trial court's general damage award should be increased, we find the trial court did not abuse its discretion in awarding only $2,500.00 in general damages to plaintiff. Since we have found that the $2,500.00 general damage award is not an abuse of discretion, a review of damage awards, in similar cases, is unwarranted. Therefore, we affirm the trial court's award of general damages.
In her fourth Assignment of Error, the plaintiff argues that the trial court *1137 abused its discretion in failing to assess all costs for the proceedings to the defendants. In addition, the plaintiff argues that the trial court's abuse of discretion has necessitated this appeal and, therefore, all costs of their appeal should be assessed to the defendants.
"Except as otherwise provided by law, the [trial] court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." La. C.C.P. art. 1920. A trial court is afforded great discretion in its assessment of court costs, and can be reversed by an appellate court only on a showing of abuse of that discretion. Law Offices of Robert M. Becnel v. Ancale, 02-285 (La.App. 5 Cir. 9/30/02), 829 So.2d 573, 576-577. See also, Scramuzza v. River Oaks Inc., 03-959 (La.App. 5 Cir. 3/30/04), 871 So.2d 522, 531-532. Appellate courts shall render any judgment which is just, legal, and proper upon the record on appeal, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as may be considered equitable. La. C.C.P. art. 2164. Therefore, both trial and appellate courts are vested with discretion in the apportionment of costs. Law Offices of Robert M. Becnel v. Ancale, 829 So.2d at 576-577. However, generally, the prevailing party is not assessed with costs, unless in some way he incurred additional costs pointlessly or engaged in other conduct, which justified an assessment of costs against him. Id.
In the instant case, the trial court judgment specifically provided that each party was responsible for its own costs, even after finding that the defendant, Elaine Peck, was one hundred percent at fault for the plaintiff's injuries. However, there is no indication that the plaintiff/appellant, the prevailing party, incurred additional costs pointlessly or engaged in other conduct, which justified an assessment of costs against her. In fact, the defendant/appellees refused her request for amicable demand necessitating trial on the merits, and at trial, she proved that her injuries were a result of the accident and that her subsequent disabling condition necessitated the medical care that she received for the evaluation and treatment for her injuries. Therefore, the trial court erred in failing to assess all costs of the proceedings to the defendants. In addition, because we have found, as did the trial court, that the defendant, Elaine Peck, was 100 percent at fault for the plaintiff's injury, and since amicable demand was refused necessitating trial and this appeal, the defendants bear all costs of this appeal.
For the foregoing reasons, the judgment of the trial court is reversed in part and affirmed in part, in accordance with this opinion.
REVERSED IN PART AFFIRMED IN PART.
NOTES
[1] According to the Motor Vehicle Crash Report, Ms. Westley drove a vehicle, which was owned by R.J. Simpson, her uncle, and insured by U.S. agencies.
[2] The Motor Vehicle Crash Report states that the driver of the second vehicle was Jean E. Peck, in error.
[3] During the trial, the claim filed on behalf of Diamond Lewis was waived and dismissed.
[4] In its appellate brief, Allstate Insurance Company claims that it was unwilling to settle the case because of the exorbitant amount of money that was demanded in this accident of a minor nature.
[5] According to the Boyd Gaming Corporation's Personnel Change Form, Ms. Westley took off work from May 14, 2001 to May 18, 2001. She returned to work on May 21, 2001.
[6] Dr. Berman is incorrectly referred to in the trial transcript as Dr. Behrmann.
[7] Plaintiff's counsel introduced two MRI bills from Magnolia Diagnostics. Each MRI cost $595.00.
[8] Ms. Westley's daughter, Diamond Lewis, was six months old, at the time of the accident, and her son, Jarmon Westley, was born in June of 2002. Ms. Westley testified that the pregnancy and subsequent birth of her son did not affect the pain in her left shoulder.
[9] Ms. Westley's stock clerk duties require her to lift boxes.
[10] Allstate paid for damage to the bumper and muffler assembly, on the car driven by Ms. Westley.
[11] Ms. Westley was referring to East Jefferson Hospital.
[12] Later, in her testimony, Ms. Westley agreed that she was prescribed Naproxen and Cyclobenzaprine or Flexeril, which she took until the prescription ran out. She received no refills of the medications and did not take any over the counter pain relievers. The medications cost $15.00.
[13] Dr. Berman is incorrectly referred to as Dr. Behrmann, during Ms. Westley's testimony.
[14] The bill from Berman Chiropractic Clinic indicates that Ms. Westley was treated on fourteen occasions in May of 2001 and nine occasions in June of 2001.
[15] This is presumably on a ten point scale.