MARC E. JOHNSON, Judge.
|2In this automobile accident case, Plaintiff, Nykareha Clement, appeals the trial court’s judgment in favor of Defendant, Allstate Insurance Company (“Allstate”), dismissing her claims. .For the reasons that follow, we reverse.
Plaintiff filed suit on February 11, 2011, alleging she suffered personal injuries and damages in an automobile accident that occurred on May 25, 2010. She named as defendants: Nicole Carbon, as the tortfea-sor; Ms. Carbon’s father Frank Carbon, as the named insured for the offending vehicle; Allstate, as insurer of the offending vehicle; and State Farm Mutual Automobile Insurance Company, as Plaintiff’s uninsured/underinsured motorist carrier.[1] Prior to trial, Plaintiff stipulated that her damages did not exceed $50,000. The matter proceeded to a bench trial on May 23, 2013. At the beginning of trial, Plaintiff agreed to dismiss the Carbons, and Allstate stipulated to liability.
|aThe evidence at trial showed that on May 25, 2010, Plaintiff was stopped at a stop sign at Bonnabel Blvd. and Codifer Blvd. in Metairie when the car she was driving was struck from behind by a vehi- *462 ele driven by Nicole Carbon. According to Ms. Carbon, she was stopped behind Plaintiff at the stop sign. When Plaintiff started to inch forward, Ms. Carbon took her foot off the brake and struck the rear of Plaintiffs car when Plaintiff re-applied her brakes. Conversely, Plaintiff testified that Ms. Carbon was traveling anywhere between 25 and 45 mph at the time of impact. The impact caused $286.44 in property damage to Plaintiffs car and no damage to Ms. Carbon’s vehicle.
Plaintiff sought medical treatment the next day at the River Parish Hospital emergency room for neck pain. The emergency room physician noted a right trapezius spasm and diagnosed Plaintiff with whiplash. She was given an anti-inflammatory and a muscle relaxer, and instructed to follow up with her primary care physician.
The next day, on May 27, 2010, Plaintiff sought treatment with Dr. Robert Dale, a chiropractor at River Parishes Chiropractic. According to Dr. Dale, Plaintiff primarily complained of neck pain and right upper thoracic pain with weakness in the right arm. She also complained of low back pain and right hip pain. His physical exam revealed Plaintiff had restricted range of motion of the cervical spine with severe pain in right rotation, weakness in her right arm and hand, and loss of lumbar movement. Dr. Dale’s treatment consisted of ultrasound, interferential electrother-apy, ice packs to reduce her cervical spasms, and dry hydrotherapy.
Dr. Dale continued to treat Plaintiff 51 times over .the following 13 months, until June 2011. Dr. Dale testified that treatment of Plaintiffs low back and right hip area was highly successful, with the last treatment to those areas occurring in [^December 2010. Thereafter, he focused his treatment on Plaintiffs cervical area and right thoracic area. However, Dr. Dale explained that’ Plaintiff did not respond well to treatment and continued to complain of weakness in the right arm and decreased sensation in the right hand. He testified that Plaintiff had persistent differences in the strength of her right arm; specifically, her right arm was weaker than her left arm.- Because of Plaintiffs continued complaints and lack of improvement, Dr. Dale suspected she had some disc damage that was causing her neck and shoulder problems. As a result, on March 18, 2011, Dr. Dale requested a cervical MRI.
On May 17, 2011, prior to obtaining the MRI ordered by Dr. Dale, Plaintiff was involved in a second automobile accident. She saw Dr. Dale after this second accident on May 25, 2011. At that time, Plaintiff told Dr. Dale that the second accident slightly aggravated her neck problems, but claimed there was not much change in her neck condition. She still had the right arm issues and intermittent hand numbness, which she had experienced prior to the second accident. Plaintiffs primary complaint from the second accident was low back and left hip pain.
A cervical MRI was performed on May 26, 2011, and showed a bulge of the C5-6 disc and some ligamentous thickening at the C6-7 vertebra, which according to Dr. Dale indicated some damage to the ligament and possible ¿carring. Dr. Dale opined that it was more likely than not that the disc problems were the result of the first accident because Plaintiff had consistently complained of neck pain and radicular symptoms after the first accident and prior to the second accident.
Dr. Dale stopped treating Plaintiffs neck pain after the second accident because he had referred her for medical evaluation based on the MRI results. [¡¡However, he continued to treat Plaintiff for the low back and hip pain she experi *463 enced after the second accident through January 2012.
Plaintiff testified that after Dr. Dale referred her to specialists, she saw Dr. Thad Broussard, an orthopedic surgeon, and Dr. David Wyatt, an orthopedist. Neither of these doctors testified, but their medical records were introduced into evidence. Dr. Broussard’s records show that he examined Plaintiff on June 15, 2011. He reported that Plaintiff complained of neck and back pain and numbness or sensory loss in her right hand. He reviewed her MRI and noted a bulging disc at C5-6. Dr. Broussard diagnosed Plaintiff with a cervical sprain, cervical disc disease, and low back syndrome. He believed that she had probably reached maximum medical improvement and was not a surgical candidate. He further believed she should discontinue chiropractic care. He prescribed an anti-inflammatory and gave her an injection.
Dr. Wyatt’s records show that he first saw Plaintiff on January 20, 2012, at which time she complained of back and left hip pain. Dr. Wyatt’s records show that Plaintiff only related an automobile accident of May 2010; however, Plaintiff testified at trial that she told Dr. Wyatt that she had been in two accidents, one in May 2010 and one in May 2011. Dr. Wyatt prescribed an anti-inflammatory and recommended she continue with chiropractic care. Dr. Wyatt next saw Plaintiff on August 16, 2012, and prescribed a back brace.
After Plaintiff concluded her case, Allstate called its only witness, David Centan-ni, a private investigator. Mr. Centanni testified that he conducted surveillance on Plaintiff four times in July 2012, but only actually observed Plaintiff on one occasion. On that one occasion, Mr. Centanni observed Plaintiff for a total of ten minutes and saw Plaintiff walk towards her residence and then he saw her leave her residence.
| fiAt the conclusion of trial, the trial court took the matter under advisement. It rendered judgment the next day in favor of Allstate and against Plaintiff. In its reasons for judgment, the trial court stated that it found Plaintiff and her case lacked credibility, and it believed Plaintiff was hurt in the second accident and not the first and, therefore, should not recover in this case.
Plaintiff appeals the trial court’s judgment and raises three issues. First, she contends the trial court improperly considered the settlement amount for her second accident. Second, she argues the trial court erred in allowing Allstate to call a witness who was not listed on the witness list under the guise of being a rebuttal witness. And, third, Plaintiff maintains the trial court was manifestly erroneous in refusing to accept uncontroverted evidence and award her damages.
We need not discuss Plaintiffs first two assignments of error because we find the trial court committed manifest error in failing to award damages.
An appellate court will not set aside the trial court’s factual findings in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In order to reverse a trial court’s factual findings, an appellate court must find from a review of the entire record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes the trial court’s finding is clearly wrong. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95); 650 So.2d 757, 762. An appellate court must determine whether the factfinder’s conclusion was a reasonable one, not whether the trier of fact was right or wrong. Westley v. Allstate Ins. Co., 05-100 (La.App. 5 Cir. 5/31/05); 905 *464 So.2d 1127, 1134. When there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous. Id. Therefore, if the appellate court finds that the trial court’s findings of fact are reasonable on review |7of the entire record, it may not reverse the judgment, even if it would have weighed the evidence differently were it the trier of fact. Id.
In the present case, the trial court found that Plaintiff did not carry her burden of proving that her injuries were caused by the accident. After reviewing the entire record, we find the trial court was clearly wrong in its finding.
In a suit for personal injury, the plaintiff bears the burden of proving, by a preponderance of the evidence, a causal relationship between the injury sustained and the accident which caused the injury. Maran-to, 650 So.2d at 759. The test for determining this causal relationship is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Id. Uncontroverted evidence should be taken as true to establish a fact for which it is offered absent any circumstances in the record casting suspicion as to the reliability of this evidence and sound reasons for its rejection. Earls v. McDowell, 07-17 (La.App. 5 Cir. 5/15/07); 960 So.2d 242, 248.
There is a causal presumption that:
[a] claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
Housley v. Cerise, 579 So.2d 973, 980 (La.1991).
The uncontroverted evidence in the record clearly shows that there is a reasonable possibility of causal connection between the May 2010 accident and Plaintiffs injuries, which necessitated the medical care she received. The day after the accident, Plaintiff sought treatment in the emergency room where it was noted Plaintiff had a muscle spasm in her right trapezius. Within the week, she sought treatment with Dr. Dale, who testified that Plaintiff complained of neck and low 18back pain with no history of similar complaints. Dr. Dale explained that while Plaintiffs low back pain resolved in December 2010 with treatment, she continued to complain of radicular symptoms involving her right arm and hand, which led Dr. Dale to believe Plaintiff had disc involvement. Plaintiffs cervical MRI, which was ordered two months before her second accident, showed a bulging disc at C5-6. Dr. Dale opined that the bulging disc was caused by the first accident because Plaintiff had consistently complained of radiculopathy after the first accident and before the second accident. This medical evidence was uncon-troverted, and we find nothing in the record to cast doubt upon the medical evidence.
Additionally, the record shows that Plaintiff was in good health prior to the accident. Nothing in the record shows Plaintiff suffered from neck or back pain or was treated for similar pains prior to the May 2010 accident. Further, Plaintiff testified that she walked approximately two miles a day for exercise prior to the accident, but was unable to walk for exercise after the accident for almost a year because of the pain. No evidence was introduced to negate this. Although All *465 state attempted to disprove Plaintiffs claim that she was unable to walk for exercise for a period of time after the accident through the testimony of Mr. Centanni, his testimony was of no value. Mr. Centanni’s surveillance of Plaintiff occurred more than two years after the first accident, which was more than one year after Plaintiff testified that she resumed walking. Additionally, Mr. Centanni only observed Plaintiff for a period of ten minutes on one of four occasions. During those ten minutes, Mr. Centanni merely saw Plaintiff walking around in front of her home. His testimony did nothing to cast doubt on Plaintiffs testimony or the uncontroverted medical evidence.
In Maranto v. Goodyear Tire & Rubber Co., supra, the supreme court decided a similar issue of causation. The plaintiff was involved in a three-car | flaccident. She sought treatment with her internist the first business day after the accident for general aches and pains. After unsuccessful treatment with her internist, the plaintiff sought treatment with an orthopedic surgeon. A subsequent MRI revealed a herniated disc at L5. The record showed the plaintiff was in good health prior to the accident, but immediately started suffering pain that progressively worsened after the accident. The trial court found the medical testimony did not support a finding that the plaintiffs disc injury was related to the accident, a finding that was affirmed by the appellate court. The supreme court reversed, finding the trial court and appellate court committed manifest error in finding the plaintiffs injuries were not related to her accident.
Similar to Maranto, we find the trial court committed manifest error by determining Plaintiffs injuries were not related to her accident. The uncontroverted medical evidence clearly shows that Plaintiff suffered injuries as a result of the May 2010 accident, for which she treated for one year before being involved in a second accident. Accordingly, we reverse the judgment of the trial court.
When a factfinder does not reach an issue because of an earlier finding which disposes of the case, the appellate court, in reversing the earlier finding, must make a de novo determination of the undecided issues from the facts in the record. LeBlanc v. Stevenson, 00-0157 (La.10/17/00); 770 So.2d 766, 771-72. Thus, when the trial court has made no award for damages because it found the accident did not cause the damages at issue, the appellate court must make an award that is just and fair based on a de novo review of the record. Id.; See also, Mart v. Hill, 505 So.2d 1120, 1129 (La.1987).
Upon a de novo review of the record, an appellate court is not constrained to the lowest or highest amount reasonable for damages. Instead, the appellate court hois empowered to award an amount which represents appropriate compensation for the damages revealed in the record. Taylor v. State Farm Mutual Automobile Ins. Co., 01-0317 (La.App. 3 Cir. 10/3/01); 796 So.2d 802, 808.
The record shows Plaintiff suffered a soft tissue injury to her lower back and a bulging disc at C5-6 as a result of the May 2010 accident. Although the MRI was not taken until after the second accident, Plaintiffs complaints of radicular symptoms prior to the second accident were consistent with a disc problem. Dr. Dale ordered the MRI two months prior to the second accident because he believed Plaintiffs symptoms were being caused by disc involvement. Dr. Dale opined that Plaintiffs bulging disc was more likely than not caused by the first accident because she complained of neck pain and radicular symptoms after the first accident and prior to the second accident. Further, the rec *466 ord shows Plaintiffs main complaints after the second accident were limited to her lower back and left hip. While Plaintiff indicated she had a slight aggravation of her neck pain after the second accident, she stated there was not much difference in her neck and right arm and hand pain before and after the second accident.
As a result of the May 2010 accident, Plaintiff treated for her low back injury for seven months. Additionally, Plaintiff had chiropractic treatment for her-neck for one year and still suffers pain related to the bulging disc. The last treatment she received for her neck was an injection one year and one month after the accident.
Based on our review of similar awards, we find that Plaintiff is entitled to $30,000 in general damages. Compare Boudwin v. General Insurance Co. of America, 11-270 (La.App. 1 Cir. 9/14/11), 2011 WL 4433578 In (unpublished opinion)[2] — general damage award of $33,654 for the plaintiff who suffered low back injury and disc bulge at C5-6 and C6-7; Mixter v. Wilson, 10-464 (La.App. 5 Cir. 12/14/10); 54 So.3d 1164-general damage award of $30,000 for a cervical sprain with two disc ruptures and a bulging disc, for which the plaintiff treated more than one year; Gomez v. Bardwell, 09-1334 (La.App. 1 Cir. 2/12/10), 2010 WL 502788 (unpublished opinion) — general damage award of almost $38,000 for minimal disc bulge at C5-6 and C6-7; Nugent v. Continental Casualty Co., 93-867 (La.App. 3 Cir. 3/2/94); 634 So.2d 406 — general damage award of $40,000 for bulging discs at L4-5 and C5-6 and carpal tunnel syndrome; ANMAC Foundation Inc. v. St. Patrick Hospital of Lake Charles, 594 So.2d 951 (La.App. 3rd Cir.1992) — general damage award of $27,000 for cervical and lumbar strain, bulging disc at C5-6; Henry v. Nat’l Union Fire Ins. Co., 542 So.2d 102 (La.App. 1st Cir.1989), writ denied, 544 So.2d 405 (La.l989) — general damage award of $65,000 for two bulging discs at C5-6 and C6-7 with pressure on or damage to the nerve roots with 51% chance for future surgery.
Additionally, we award special damages in the amount of $9,434.00 related to the medical expenses Plaintiff incurred as a result of her injuries. These damages include imaging services in the amount of $2,710.00 from' East Jefferson Imaging, $660.00 for treatment from River Parishes Hospital, $5,564.00 for treatment from Dr. Robert Dale at River Parishes Chiropractic, and $500.00 for treatment from Dr. Thad Broussard. We do not find Plaintiff is entitled to the expenses she incurred for treatment with Dr. David Wyatt. His medical records show that Plaintiff first saw him eight months after the second accident and her 11{>main complaints at that time were low back and left hip pain, which were related to the second accident and not the May 2010 accident.

DECREE

For the foregoing reasons, we reverse the judgment of the trial court and render judgment in favor of Plaintiff, Nykareha Clement, against Defendant, Allstate Insurance Company, in the amount of $39,434.00 together with interest and costs. Costs of this appeal are to be paid by Allstate Insurance Company.

REVERSED AND JUDGMENT RENDERED.

LILJEBERG, J., Concurs-With Reasons.

. Plaintiff dismissed State Farm prior to trial.

. La. C.C.P. art. 2168 provides that unpublished opinions of the supreme court and the courts of appeal shall be posted by such courts on the courts’ Internet websites and that those posted opinions may be cited as authority.