FREDERICKA HOMBERG WICKER, Judge.
| gDefendants, Huong Lu and Alstate Insurance Company, appeal a judgment awarding plaintiff, Marie Lee, $15,000.00 in general damages in this motor vehicle accident case. For the following reasons, we affirm.
Plaintiff filed a Petition for Damages against defendants alleging that on May 2, 2002 Lu negligently made an illegal left turn into plaintiffs lane of traffic and collided into plaintiffs vehicle, resulting in severe injury to plaintiff. Plaintiff sought damages for past, present, and future physical and emotional pain and suffering, medical bills, and lost wages.
After a trial on the merits ón June 30, 2005, the court awarded plaintiff $15,000.00, “in accordance with the oral reasons presented in Court” which are, as follows:
After reviewing the records the Court finds in favor of the Plaintiff and against Mr. Lu. The Court finds that the Plaintiff ^preponderated in her case; that she was free of negligence and Mr. Lu was negligent insofar as the accident is concerned.
The Court however is not impressed that the surgery that occurred ... [w]as causally related to the accident which occurred in May of '02. The Court therefore assesses general damages for pain and suffering only, in the sum of $15,000. The Court is not impressed that the Plaintiff was able to prove any special loss, special damages; more specifically, in terms of loss of income or payment of medical bills to any degree of certainty, nor any other item of special damage. Therefore there is no reward for that.
Defendants appeal.
Plaintiff testified at trial that on May 2, 2002, while driving eastbound on Gretna Boulevard, she was involved in an automobile accident. As she approached the intersection of Gretna Boulevard and Huey P. Long, Lu pulled out in front of her. She “threw on” her brakes and turned her wheel, trying to avoid a collision; however, she was unsuccessful and her vehicle impacted the passenger side, “towards the back,” of Lu’s vehicle.
Plaintiff stated that she felt a sharp pain in her neck when the accident occurred; but by the time the police arrived, she was “fine” and “didn’t have any more pain,” so she decided not to go to the emergency *368 room. However, the next morning she woke up with “bad neck pain and throbbing chest pain and numbness in [her] arm,” prompting her to go to West Jefferson Hospital to seek medical. attention.
Plaintiff stated she had been treated for neck pain at West Jefferson Emergency Room prior to the accident. The record includes the Emergency Department Report from this March 15, 2002 visit. Plaintiffs chief complaint was “Left neck pain” and the diagnosis was “Neck Pain — Mus-culoskeletal.” In the report the emergency room physician states, “I do believe the patient’s pain is musculoskeletal in nature. It is possible that this is an early manifestation of a degenerative cervical disc.” Further, plaintiff testified that prior to and at the time |4of the accident she was being treated by Dr. James M. Todd, III, an orthopedic surgeon, for stiffness in her neck, chest pain, and numbness in her left arm [1]. At her initial visit with Dr. Todd, pre-accident (March 27, 2002), plaintiff indicated on a form that her pain level was nine on a one to ten scale, with ten being the worst pain[2]. However, at trial plaintiff testified that her pain level prior to the accident was a five or six, and approximately a ten after the accident. Plaintiff explained on cross examination that she was referring to her chest pain, not her neck pain, on the March 27, 2002 form.
Plaintiff initially testified that Dr. Todd’s course of treatment prior to the accident included physical therapy, along with medication, and that this treatment helped her “somewhat” and relieved the pain “a little”; but post-accident physical therapy no longer provided the same level of relief. However, plaintiff later testified that she did not receive physical therapy prior to the accident.
Plaintiff described the pain after the accident as a “hard throbbing pain” in the neck, “hard” muscle spasms in the chest, numbness in her left arm, and the beginning of numbness in her right arm. The accident worsened the numbness in her left arm and turned her “stiff’ neck into “neck pain.” She described her lifestyle post-accident as “constant pain every day, being medicated every day, not being able to do much.”
Plaintiff further testified that she was sleeping “fine” and was able to perform “normal life activities” and all of her duties at work, prior to the accident; her only limitation was that she was prohibited from doing “anything heavy” while performing household chores. After the accident, she could no longer perform her | sdaily routine — she could not perform her household chores, drive the van at work, climb the stairs, go for walks, pick up her grandchild, or comb her hair.
Plaintiff further testified that she was in pain from the date of the accident until surgery relieved the pain. Approximately three weeks after surgery, she no longer needed medication; five weeks after surgery she was able to go back to work and resume normal activities.
The deposition of Dr. Todd was introduced into evidence. Dr. Todd testified that he first saw plaintiff prior to the accident, on March 27, 2002, when she visited his office complaining of neck pain and left upper extremity pain radiating with numbness for the past month. Upon examination, he found that plaintiff had limitation of motion and spasm in the neck *369 associated with crepitas. Her neurologic examination was within normal limits and he saw no indication of atrophy, muscle wasting, or skin changes. He suspected that she had a degenerative disk at a particular nerve root from a compression at the nerve root level and an x-ray later revealed a narrowing at plaintiffs C5-C6 and C6-C7 levels. He recommended physical therapy and an MRI, to better evaluate her degenerative disk disease.
Dr. Todd testified he reviewed plaintiffs April 5, 2002 MRI and determined that plaintiff had a large herniated disk at the C6-C7 level that was impinging on the left nerve root, as well as the thecal sac. He stated that he did not recommend surgery at that time because defendant’s need for surgery depended on her response to more conservative treatment, i.e., physical therapy, medications, and epidural steroid injections; if these conservative treatments were unsuccessful, then surgery would be warranted.
Dr. Todd’s next examination of plaintiff on June 12, 2002, post-accident, showed limitation of motion and mild spasm at the cervical level, consistent with |fiher preexisting herniated disk. She had tenderness over the C6 and C7 level, but her neurological exam was unchanged from the pre-accident neurological exam. Plaintiff had no new positive findings.
Plaintiffs next appointment with Dr. Todd was on August 7, 2002. Dr. Todd testified she was complaining of persistent pain in the generalized area of the cervical spine, across the anterior chest, and down the thoracic lumbar spine. Also, she had developed a problem with swallowing. Dr. Todd stated her physical examination was not consistent with problems in the neck area; swallowing difficulty could not be attributed to cervical degenerative disk disease. In Dr. Todd’s opinion, plaintiffs August 7, 2002 complaints were not attributable to the accident.
Plaintiffs last appointment with Dr. Todd was on September 4, 2002. She complained of a “shocking” sensation in her left index and long finger, numbness, tingling, and weakness in the left upper extremity; her right arm was stiff and had been tingling for the last two weeks. She also had low back pain, which worsened during menstruation. Plaintiff had full range of motion of the neck, with some mild, right-sided spasm. He found no neurological deficits in the upper extremities and the results from an examination of her pelvis, low back, and lower extremities were normal, except for some spasm in the lumbar paraspinal muscles.
Dr. Todd testified that he could not attribute the onset of plaintiffs low back pain to the accident. Nor could he attribute the tingling in plaintiffs right arm to the accident, though, in his opinion, it could be attributable to her pre-accident herniated disk at the C6-C7 level.
Dr. Todd further testified that he could not determine if the accident affected plaintiffs condition. . He explained that “[a]t this point, there were a lot of inconsistencies. She did not really listen to many of the recommendations we 17offered such as physical therapy and medication.” In his opinion, plaintiffs neck problem was secondary to degenerative disk disease and a herniated disk at the C6-C-7 level “because she was having essentially the same problem before the accident.” He stated that her complaints and findings after the accident were “nearly identical” to those pre-accident and the accident did not change the pattern of her symptoms.
Dr. Todd stated that plaintiffs need for an anterior cervical diskectomy at C6-C7 was “[ajbsolutely” caused by the herniated disk identified on her pre-accident MRI in April 2002 and the symptoms and findings *370 that she first reported to him in March 2002. Further, he had “no way” of attributing plaintiffs need for surgery to the accident. In his opinion, plaintiff would have eventually needed surgery without the accident.
The deposition of Dr. John C. Steck, a neurosurgeon, was introduced into evidence. Dr. Steck testified that he performed an anterior cervical diskectomy with fusion at C6-C7 on plaintiff on March 19, 2003. He stated that the operation was not required, but was offered as a means to relieve pain; most cervical disk problems, cervical spondylosis, are managed non-operatively. Further, it was Dr. Steck’s opinion, based on only a brief review of Dr. Todd’s medical notes for plaintiff pre- and post-accident, that the accident probably had no effect on plaintiffs need for surgery.
On appeal defendants allege that the trial court erred in awarding $15,000.00 general damages because plaintiff failed to prove her injuries were causally connected to the accident.
Plaintiff must prove by a preponderance of the evidence the existence of a causal relationship between the accident and the injuries she claims; the trial judge’s determination whether the plaintiff has carried this burden is a finding of 1 sfact that will not be disturbed on appeal unless it is manifestly erroneous. Prestenback v. Schwegmann Giant Supermarkets, Inc., 96-793 (La.App. 5 Cir. 1/28/97), 688 So.2d 149, writ denied, 97-0977 (La.5/30/97), 694 So.2d 249. The test for determining a causal relationship between an accident and subsequent injuries is whether the plaintiff has proved through medical and lay testimony that it is more probable than not that her injuries were caused by the accident. Id. If the appellate court finds that the trial judge’s findings of fact are reasonable on review of the entire record, it may not reverse the judgment, even if it would have weighed the evidence differently if it were the trier of fact. Westley v. Allstate Ins. Co., 05-100 (La.App. 5 Cir. 5/31/05), 905 So.2d 1127.
The trial judge assessed general damages for pain and suffering only. The record includes plaintiffs testimony that the accident worsened the numbness in her right arm and significantly increased her level of pain. She testified that her pain level prior to the accident was a five or six, and approximately a ten after the accident. Plaintiff described her post-accident lifestyle as one of “constant pain every day, being medicated every day, not being able to do much.” She could no longer perform her household chores, drive the van at work, climb the stairs, go for walks, pick up her grandchild, or comb her hair. Further, neither Dr. Todd nor Dr. Steck ruled out the possibility that plaintiffs condition was affected by the accident. Therefore, we find that the trial court did not err in awarding plaintiff general damages for pain and suffering.
Defendant also asserts the trial court’s award of $15,000.00 in general damages “shocks the conscience” because the accident merely aggravated plaintiffs preexisting condition “a bit” and did not change her symptoms or complaints.
|9The trial judge has much discretion in fixing general damage awards, which are those damages which may not be fixed with pecuniary exactitude. LeMasters v. Boyd Gaming Corp., 04-1054 (La.App. 5 Cir. 2/15/05), 898 So.2d 497, writ denied, 05-0751 (La.5/6/05), 901 So.2d 1103. This Court reviews general damage awards under an abuse of discretion standard. Westley, supra. In reviewing a general damage award, the appellate court must consider the particular facts of the plaintiffs injuries, and the effects of those *371 injuries on the particular plaintiff. Id. An appellate court may not overturn an award for general damages unless it is so out of proportion to the injury that it shocks the conscience. Id. Consequently, this Court should rarely disturb an award of general damages. Id. Only after the appellate court has determined that the trier of fact abused its discretion is a resort to prior awards appropriate; the prior awards may be referred to only for the purpose of determining the highest or lowest point, which is reasonably within that discretion. LeMasters, supra.
After reviewing the trial court's award of $15,000.00 in general damages to plaintiff, we find that the trial court did not abuse its discretion.
Accordingly, we affirm the judgment of the trial court.

AFFIRMED.

. Plaintiff testified that she was also' being treated by her primary care physician, prior to the accident, for muscle spasms in her chest.

. Defendants introduced into evidence a Bone and Joint Clinic Patient Data Form completed by plaintiff during this initial visit.