LILJEBERG, J.
*1302 In this personal injury case, plaintiff appeals the trial court's award of general and special damages, arguing that both are abusively low and should be increased. Defendants have answered the appeal, asserting that the damages awarded were excessive and should be reduced. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
This case arises from a motor vehicle accident that occurred on April 25, 2015, on westbound Interstate 10 in Kenner, Louisiana. Plaintiff, Kailey King, was riding as a guest passenger in a van, referred to as a "limo bus," on the way to her senior prom when the van was struck from behind by a vehicle driven by Robert Mongrue and insured by National General Assurance Company ("National"). On April 7, 2016, plaintiff filed suit against Mr. Mongrue, National, and others, asserting that she suffered personal injuries in the accident. In her petition, she sought damages for physical and mental pain and suffering, disability, medical expenses, loss of earning capacity, loss of consortium, and any other damages allowed by law.
On August 14, 2017, Ms. King filed a Motion for Partial Summary Judgment, seeking a determination that Mr. Mongrue was solely at fault for the accident.[1] After a hearing on September 13, 2017, the trial court granted the motion, finding that the sole and legal cause of the accident sued upon was the actions of Robert Mongrue.[2]
Liability having been determined, the matter came before the court on October 23, 2017, for trial on the issue of the damages, if any, caused by this accident. Ms. King acknowledged that she was injured in a prior accident just months before this accident, and she suffered injuries to her back which were not resolved at the time of this accident. However, she asserted that the second accident aggravated or exacerbated her prior back injuries, and she claimed that she suffered new injuries to her neck and right hand numbness.
At trial, Kailey King testified that on October 17, 2014, she was on a college tour of Louisiana State University when she was involved in an accident on campus ("the LSU accident"). According to Ms. King, she and her mother were in a golf cart during the tour when the driver hit a parked car. Ms. King testified that she was ejected from the golf cart and her body hit an "SUV," causing her to suffer injuries to her back and shoulder, broken ribs, and a scalp laceration. Ms. King was treated at a hospital and released.
According to Ms. King, she went to Children's Hospital a few days later, where it was determined that she had compression fractures in her thoracic spine. She was provided with a back brace that was molded to fit her body and told to wear it at all times for four weeks. She also attended ten weeks of physical therapy and was prescribed Lortab for pain. Ms. King testified that she had trouble focusing and concentrating after the LSU accident, and she could not regularly attend school. According to Ms. King, in April of 2015, she completed her physical therapy, started to feel better, and returned to school three days per week. However, she was not completely well and continued to take Lortab.
On April 25, 2015, the second accident occurred, which is the accident at issue in this litigation. Ms. King's mother arranged for a "limo bus" to take Ms. King and her *1303 friends to their senior prom that night. According to Ms. King, she took Lortab in order to feel well enough to go that night, because she was still in pain from the LSU accident. They went in the bus to a restaurant in Metairie, and then proceeded to go to the prom in Pontchatoula. While they were in Kenner on Interstate 10 westbound, they were struck from behind by Mr. Mongrue's vehicle. After this accident, Ms. King did not go to a hospital. She went to the prom and her mother brought her more Lortab.
Ms. King testified that her neck began hurting after this accident, her back pain increased, and she began experiencing numbness in her right hand. She acknowledged telling the police officer at the scene that she was not injured, but she believes she was unaware of her injuries due to the Lortab she had taken that night. Ms. King subsequently went back to Children's Hospital and was provided with a new back brace. Although she admitted that she was diagnosed with depression and anxiety prior to the second accident, Ms. King stated that she began taking medication for depression and anxiety after the second accident. Ms. King stated that she felt "horrible" about having to wear another back brace, her senior prom was ruined, and she had to miss senior activities due to the pain caused by the second accident.
Ms. King testified that she would like to have physical therapy again and "trigger point injections" in her back, but she cannot afford these treatments, as they are not covered by her health insurance. She also testified that she would like to have a job, but she cannot work due to her pain and cannot drive due to her pain medication.
On cross-examination, defendants' counsel elicited testimony about Ms. King's travels after the accidents. According to Ms. King, in February of 2015, after the LSU accident but before the second accident, she was in constant pain. However, she admitted that she was able to ride in a car to Tampa, Florida in December of 2014, and she was able to attend a school dance and ride to Disney World in a car in February of 2015. She stated that she was only able to travel because she was on Lortab. Although her physical therapy records indicate that she had increased pain from walking at Disney World, she testified that she used a wheelchair. She also went to Disney World after the second accident in May of 2015 and again in July of 2015. Although the pictures from Disney World did not show Ms. King in a wheelchair, she testified that she did not want to take pictures in a wheelchair because it was embarrassing. Ms. King also flew to Chicago in the summer of 2015 for a Taylor Swift concert, to New York during Mardi Gras vacation in 2016, and to St. Louis during the summer of 2016.
Ms. King testified that it was her dream to participate in the Disney college program and to pursue a career in marketing at Disney World. She went to Disney World to audition in October of 2016 and was accepted to the program. However, after three days "on the job," she had to quit because she could not fulfill the job responsibilities due to her pain. She stated that she would have been paid $10 per hour if she had been able to participate in the Disney program.
Ms. King was deposed on August 3, 2016, in connection with litigation pertaining to the LSU accident. In this deposition, she stated that her ribs and back were "instantly" hurt when the second accident occurred, but she did not mention any neck pain. She also stated that the anxiety and depression she suffered after the LSU accident was not worse after the second accident. However, at trial, she testified that her anxiety and depression had, in fact, increased after the second accident.
*1304 In her deposition, she testified that after the second accident, she had x-rays taken, was told that her prior injuries were "reaggravated," and received another back brace, which she wore for four weeks. However, at trial, she testified that she subsequently learned that her injuries were worse when she had an MRI in September of 2016.
Two days after the second accident, April 27, 2015, Ms. King saw her pediatrician, Dr. Nicholas Danna, for pain due to the accident and an ADHD consultation. Dr. Danna's deposition, which was taken on September 20, 2017, was admitted into evidence in lieu of live testimony. In his deposition, Dr. Danna stated that he examined Ms. King's neck at the April 27, 2015 visit, and there were no physical findings or abnormalities. She reported neck pain, but Dr. Danna agreed that he has to rely on a patient's truthfulness regarding subjective complaints. He also saw Ms. King on May 15, 2015, and she reported that she was having anxiety and that she feared riding in cars. He also saw Ms. King on June 10, 2015, but she did not complain of neck or back pain, just a sore throat.
Ms. King did not have any doctor visits for neck or back pain from May of 2015 until May 25, 2016. Ms. King explained that she did not see a doctor during this time because her mother had neck surgery and could not drive her, and she did not have health insurance from January 2016 to August of 2016.
On August 2, 2016, Ms. King saw Dr. Danna and complained of weakness and dizziness, and on September 15, 2016, she complained of sinus congestion and fluid in her ears. Ms. King saw Dr. Danna again on April 26, 2017, where she complained of neck and back pain, stated that she needed another MRI, and said that she was feeling weak and numb on her right side. This was the first time she complained to Dr. Danna of right side numbness.
At trial, Dr. James Dyess testified and was accepted as an expert in internal medicine. He saw Ms. King on August 6, 2017, and she told him about the accidents. Based on his evaluation of Ms. King and the medical records he reviewed, Dr. Dyess opined that as a result of the second accident, she suffered a "new cervical strain with positive C5-6 and C6-7 disc bulges," new positive L5-S1 disc herniation, and new positive T9-10 and T12-L1 disc herniations. He testified that Ms. King had an MRI of her spine in December of 2014, after the LSU accident but before the second accident, which did not indicate any abnormality in her cervical spine.
Dr. Dyess testified that he would recommend epidural steroid injections, most likely at C5-6, and an epidural steroid injection and nerve blocks at L5-S1, which typically costs $2,500 to $3,000 per injection and can generally be given two or three times per year. Dr. Dyess testified that he would relate Ms. King's cervical spine pain entirely to the second accident, and her thoracic and lumbar pain as an exacerbation of the previous accident.
On cross-examination, Dr. Dyess admitted that while he reviewed Ms. King's medical reports, he did not read any of the doctors' depositions, look at any MRIs, or "compare films." He acknowledged that the May 5, 2015 report of Raven Lee, a physicians' assistant at Children's Hospital, indicated no evidence of fractures or alignment abnormalities of her cervical or thoracic spine. He also admitted that while his report indicates Ms. King suffered a "positive adjustment disorder with mixed anxiety and depressed mood with exacerbation of symptoms" due to the second accident, he based this finding on what he believed was in Dr. Vangeffen's notes and did not make an independent determination. He acknowledged that Dr. Vangeffen, *1305 a psychologist, stated in her deposition that while Ms. King reported high levels of anxiety and depression after the second accident, she could not say if it was due to the second accident or not. He stated that he would defer to Dr. Vangeffen on all psychological issues pertaining to anxiety and depression.
Dr. Dyess testified that his examination of Ms. King in August of 2017 showed limitation of movement, though the Children's Hospital records of May 6, 2015, shortly after the accident, indicated that she showed "full range of motion of the cervical spine, full flexion and extension, bilateral bending and rotation without significant pain." Dr. Dyess admitted that the accuracy of the information reported to him by the patient is important and could affect his opinion.
Dr. Andrew Todd testified for the defense and was accepted as an expert in orthopedic surgery. He saw Ms. King on December 19, 2016, and she reported that she had been in two accidents. She complained of neck pain and numbness in her right hand. She also stated that she had thoracic pain, which increased after the second accident, and lower back pain, which began after the second accident. Dr. Todd examined Ms. King and noted a full range of motion in her neck and lumbar spine, but subjective complaints of pain. He stated that she could move her neck to the right and left completely, with no tenderness or spasm.
After he examined Ms. King, Dr. Todd reviewed her medical records, though he did not review her MRI films or x-rays. He reviewed the reports pertaining to the May 6, 2015 x-rays and MRI, which noted that the cervical spine was "essentially within normal limits." A subsequent MRI taken on May 18, 2016 showed "there's nothing wrong." While a doctor noted "mild dessication at C-5-6 and C6-7" in the cervical MRI of May of 2016, Dr. Todd opined that this could be early degenerative disc disease.
Based on his examination of Ms. King, the MRI report of May 2016, and the medical records he reviewed, Dr. Todd opined that Ms. King suffered a soft tissue sprain/strain of the cervical spine due to the April 25, 2015 accident. Based on his clinical experience, this type of injury typically heals in eight to twelve weeks. He did not find anything to suggest that the injury to her neck involved a disc injury, and he could not account for why her right hand was numb or why she had long term chronic pain. He opined that depression can relate to development of a chronic pain situation. He believes that the second accident caused a very minimal increase in her symptoms regarding her thoracic spine. Dr. Todd does not believe that Ms. King is a candidate for interventional pain injections or surgery, and he does not believe that she is disabled in any way.
Medical records provided show that Ms. King saw Dr. Kelly Scrantz, a neurosurgeon, on August 30, 2017. In his report, Dr. Scrantz stated that based on the films, it is clear that Ms. King has ongoing neck, mid, and low back pain from the two accidents, but he agrees with Dr. Todd that it is a "nonsurgical issue." He also stated that he believes she could benefit from a pain evaluation and psychological treatment, considering her ongoing pain and continuing depression and anxiety. He believes that because she has had pain since 2014, she will likely continue to have pain in the future.
The deposition of Dr. Smita Prasad, who is board certified in family medicine, was admitted into evidence. She first saw Ms. King on September 29, 2016, where she complained of lower back, thoracic, and chest pain. Dr. Prasad does not believe Ms. King mentioned the second accident during this visit. Dr. Prasad saw her next *1306 on October 25, 2016, where she complained of weakness, dizziness, lumbar and thoracic back pain, and shoulder pain. She saw Ms. King again on November 29, 2016, where she reported an increase in the intensity of her symptoms and numbness in her right upper extremity. This was the first time Ms. King reported numbness to Dr. Prasad. On December 27, 2016, Dr. Prasad saw Ms. King, who reported that the intensity of her pain was stable. During a visit in February of 2017, she continued to complain of thoracic and lumbar pain, and she made a new complaint of neck pain, which she had not described to Dr. Prasad before.
Dr. Prasad noted that the MRI report from before the second accident did not note anything about a neck injury, but MRI reports from after the accident note disc dessication and bulges in her cervical spine. Based on the information she was provided, Dr. Prasad would relate the disc dessication and bulges to the second accident.
The deposition of Dr. Kim Vangeffen, a psychologist, was admitted into evidence. In her deposition, Dr. Vangeffen indicated that she first met with Ms. King on March 16, 2015, for an interview. At this first visit, Ms. King mentioned that she had anxiety when riding in cars. Dr. Vangeffen performed some testing at subsequent visits and then met with Ms. King again on April 14, 2015, to review the results. Dr. Vangeffen did not see Ms. King again until January 24, 2017, where she told her about the second accident and reported increased anxiety and depression.
When Dr. Vangeffen first saw Ms. King, which was before the second accident, she diagnosed her with an adjustment disorder due to her emotional symptoms. When she saw her again in January of 2017, well after the second accident, her diagnosis did not change but Ms. King reported more severe symptoms. Dr. Vangeffen indicated that she could not say whether or not the increased anxiety and depression were caused by the second accident.
At the conclusion of trial, the trial court allowed plaintiff additional time to submit a post-trial memorandum. Thereafter, on November 8, 2017, the trial court rendered a judgment, finding that as a result of the second accident, Ms. King suffered new injuries to her neck, as well as an exacerbation of her pre-existing back injuries. The court also found that these were soft tissue injuries that resolved approximately seven months after the accident. The trial court awarded special damages for medical expenses in the amount of $1,593.02, and general damages in the amount of $35,000.00.
LAW AND DISCUSSION
On appeal, Ms. King complains that the trial court abused its discretion when awarding general and special damages. She argues that the trial court erred by awarding only $35,000 in general damages and $1,593.02 for past medical expenses, with no damages for future medical expenses, pain, and suffering. She asserts that the damages awarded were abusively low considering that Ms. King suffered several injuries as a result of this accident, including: 1) cervical strain with C5-6 and C6-7 disc bulges and neck pain; 2) T12-L1 disc extrusion type herniation; 3) increased low back pain; 4) numbness and weakness in right hand; 5) anxiety and depression. She further claims that the trial court erred by failing to apply the Housley presumption with respect to Ms. King's cervical spine injuries, and by finding that she only suffered soft tissue injuries to her neck and back that resolved in less than a year. Finally, Ms. King asserts that the trial court erred by failing to award general damages from November 2015 through January of 2017, including lost wages, and past and future medical bills.
*1307 Mr. Mongrue and National respond that Ms. King was "overly compensated" for the minor injuries she allegedly sustained in the second accident. They note that the trial court reasoned that Ms. King was injured in the second accident based on the fact that she resumed filling a prescription for pain medication two days after the accident. They argue that Ms. King admitted at trial she was already taking pain medication before the second accident, including the night of the second accident. They further note that Ms. King informed the responding police officer that she was not injured, and they assert that Ms. King had numerous inconsistencies in her testimony. They note that the trial court found that Ms. King's anxiety significantly increased after the second accident, but Ms. King testified in her deposition that it did not increase, stating, "No. It's just been, like, constant." Defendants also contend the testimony was insufficient to support a finding that she sustained an increase in mental anguish after the second accident.
A reviewing court must give great weight to the factual conclusions of the trier of fact. Wainwright v. Fontenot , 00-492 (La. 10/17/00), 774 So.2d 70, 74. Although a reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable. Stobart v. State of LA, Department of Transportation and Development , 617 So.2d 880, 882 (La. 1993). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id. ; Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989).
A plaintiff must prove by a preponderance of the evidence the existence of a causal relationship between an accident and the injuries claimed. Lee v. Huong Lu , 05-899 (La. App. 5 Cir. 4/11/06), 931 So.2d 365, 370. The trial judge's determination of whether the plaintiff has carried this burden is a finding of fact that will not be disturbed on appeal unless it is manifestly erroneous. Id. ; Prestenback v. Schwegmann Giant Supermarkets, Inc. , 96-793 (La. App. 5 Cir. 1/28/97), 688 So.2d 149, 155, writ denied , 97-0977 (La. 5/30/97), 694 So.2d 249. The test for determining the causal relationship between an accident and a subsequent injury is whether the plaintiff proved through medical or lay testimony that it is more probable than not that the subsequent injury was caused by the accident in question. Kliebert v. Breaud , 13-655 (La. App. 5 Cir. 1/31/14), 134 So.3d 23, 28. Causation of injuries is a fact-specific inquiry; great deference must be given to the trier of fact on the question of factual causation. Cormier v. Cushenberry , 14-70 (La. App. 5 Cir. 7/30/14), 147 So.3d 256, 261.
In a multiple accident situation, a tortfeasor is only liable for the direct and proximate results of his wrongful act, including aggravation of any pre-existing injuries. Id. ; Tompkins v. Savoie , 08-808 (La. App. 5 Cir. 3/24/09), 10 So.3d 294, 301. Although a tortfeasor takes his victim as he finds him, he cannot be liable for injuries not attributable to his wrongful act. Id.
The record shows that Ms. King was involved in the LSU accident in October of 2014, resulting in physical injuries including back and shoulder pain. Ms. King testified that she suffered anxiety and depression from that accident, and she had trouble focusing and concentrating. When the second accident occurred on April 25, 2015, Ms. King was still taking pain medication for the injuries suffered in the LSU accident.
*1308 The medical testimony differed as to the extent and duration of her injuries resulting from the second accident. At trial, Dr. Danna testified that he examined Ms. King two days after the second accident and did not note any neck abnormalities. Ms. King also saw a physician's assistant, Raven Lee, in May of 2015, who reported that there was no evidence that Ms. King suffered fractures or alignment abnormalities of her cervical or thoracic spine. Ms. King did not see any doctor for neck or back pain from May 15, 2015 until May of 2016.
Dr. Dyess testified that he saw Ms. King on August 6, 2017. Based on his examination and the records he reviewed, he opined that Ms. King suffered a cervical strain with disc bulges and herniations, as well as a positive adjustment disorder with mixed anxiety and depression as a result of the second accident. However, Dr. Dyess admitted that he did not make an independent determination of any psychological issues, and he would defer to the psychologist who evaluated Ms. King, Dr. Vangeffen. Further, Dr. Dyess testified that he did not review the MRIs or films, but rather just the reports.
Dr. Todd saw Ms. King on December 19, 2016, and he reviewed her medical records. Dr. Todd opined that Ms. King suffered a soft tissue sprain/strain of the cervical spine due to the second accident, and a minimal increase in symptoms regarding her thoracic spine. He did not find that she suffered a disc injury to her neck. Dr. Todd testified that the MRI report from May of 2015 indicated that her cervical spine was normal, and even though the MRI in May of 2016 showed "mild dessication at C5-6 and C6-7," this could simply be a sign of early degenerative disc disease.
A trial court is not bound by expert testimony; rather, expert testimony is to be weighed the same as any other evidence. Scott v. Byrd , 00-308 (La. App. 5 Cir. 8/29/00), 768 So.2d 214, 216. The trier of fact has the discretion to accept or reject, in whole or in part, the opinion expressed by an expert. Id. In the present case, it was within the trial court's discretion to reject Dr. Dyess' opinion that Ms. King suffered a herniated disc or disc bulges due to the second accident, and to rely on Dr. Todd's opinion that she suffered a soft tissue injury.
Ms. King also argues that the trial court erred by failing to apply the Housley presumption to her neck injuries. This presumption, as set forth in Housley v. Cerise , 579 So.2d 973 (La. 1991), is that a plaintiff's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the medical evidence shows there to be reasonable possibility of a causal connection between the accident and the disabling condition. Cormier , 147 So.3d at 262. The trial court considered that Ms. King did not have complaints of neck pain prior to the second accident and found that Ms. King did suffer neck injuries as a result of the second accident. However, noting that she did not seek medical treatment for this injury from May 15, 2015 until May 25, 2016, the court found that the neck pain she sustained as result of the second accident had resolved by November of 2015.
Considering all of the evidence presented, including the conflicting testimony of the medical experts, we find that the trial court was reasonable and did not manifestly err when it found that Ms. King suffered soft tissue injuries to her neck and an aggravation of her preexisting back injuries, and that these injuries resolved after *1309 seven months. Accordingly, we now consider the amount of damages awarded.
The trier of fact is accorded great discretion in its assessment of quantum for both general and special damages. Woods v. Hall , 15-1162 (La. App. 1 Cir. 4/20/16), 194 So.3d 689, 692. Special damages are those that must be specially pleaded or that can be determined with relative certainty, such as the medical expenses a plaintiff has incurred. Wainwright , 774 So.2d at 74. General damages are those damages that are inherently speculative in nature and cannot be fixed with mathematical certainty. Id. Such damages typically "involve physical and mental pain and suffering, inconvenience, loss of intellectual gratification or physical enjoyment, and other factors that affect the victim's life." Coleman v. Deno , 99-2998 (La. App. 4 Cir. 11/6/02), 832 So.2d 1016, 1021, writs denied , 03-166, 03-167, and 03-168 (La. 9/19/03), 853 So.2d 635.
In reviewing a general damage award, the appellate court must consider the particular facts of the plaintiff's injuries and the effects of those injuries on the particular plaintiff. Lee , 931 So.2d at 370-371. An appellate court may not overturn an award of general damages unless it is so out of proportion to the injury that it shocks the conscience. Id. Thus, this Court should rarely disturb an award of general damages. Id. Only after the appellate court has determined that the trier of fact abused its discretion is a resort to prior awards appropriate. LeMasters v. Boyd Gaming Corp. , 04-1054 (La. App. 5 Cir. 2/15/05), 898 So.2d 497, writ denied , 05-751 (La. 5/6/05), 901 So.2d 1103.
With regard to special damages, the trial court determined that Ms. King was only entitled to the medical expenses she incurred during the seven months following the accident, finding that the injuries due to the accident resolved by this time. Having found the trial court's determination of a seven-month soft tissue injury to be reasonable, we likewise find no abuse of discretion in the award of special damages. Thus, we affirm the special damages award of $1,593.02.
With regard to general damages, the trial court awarded Ms. King $35,000 for mental anguish, pain, and suffering due to the second accident. In support of this award, the trial court recognized that at the time of the second accident, Ms. King was in a weakened physical and mental state as a result of the LSU accident. The court found that because of her weakened state, the second accident significantly increased her anxiety and mental anguish. The trial court also indicated that in awarding general damages, it considered Ms. King's fragile state and the fact that the second accident negatively affected special lifetime events.
On appeal, Ms. King claims that the general damages award is too low, claiming that she continues to suffer from the injuries sustained in this accident. In their answer to appeal, Mr. Mongrue and National claim that the general damages award is too high.
Defendants argue that the trial court erred by finding that Ms. King suffered injuries in the second accident based on a finding that she "resumed" filling pain medication two days after the accident. Defendants are correct that Ms. King indicated she was taking pain medication up to and on the date of the second accident, and thus, she did not "resume" taking this medicine because of the accident. Nevertheless, there was sufficient evidence in the record to support the trial court's finding that Ms. King was injured to some degree in the second accident. Even defendant's expert, Dr. Todd, found that she suffered a soft tissue sprain/strain of the cervical spine and a minimal increase in *1310 her symptoms regarding her thoracic spine. Also, there was testimony regarding Ms. King's mental health issues, and the effects of having the second accident occur during her senior year of high school and before she had fully recovered from the LSU accident. The trial court found Ms. King's testimony that she suffered new and exacerbated pain after the accident was credible.
Reasonable persons frequently disagree about the measure of damages in a particular case. Youn v. Maritime Overseas Corp. , 623 So.2d 1257, 1261 (La. 1993). "It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." Id.
Considering the testimony and evidence presented, we find no abuse of the trial court's discretion in awarding $35,000 in general damages for a seven-month soft tissue injury and mental anguish. This award is reasonable and certainly does not "shock the conscience," given the particular facts of this case. Neither Ms. King nor defendants have shown that the general damages award should be altered.
Ms. King also complains that the trial court erred by declining to award lost wages. However, the record shows that Ms. King was a student and was not employed prior to the accident. Ms. King testified that she had been accepted to the Disney college program and would have earned $10 per hour if she had not been limited in performing the job duties as a result of the second accident. In order to recover for actual wage loss, i.e., past lost wages, the plaintiff must prove that she would have been earning wages but for the accident in question. Boyette v. United Services Auto. Ass'n , 00-1918 (La. 4/3/01), 783 So.2d 1276, 1279.
Ms. King testified that she auditioned for the Disney college program in October of 2016, which was well after the time that the trial court found her injuries had resolved. Based on our review of the record, we find no abuse of the trial court's discretion in failing to award lost wages in this matter, as Ms. King failed to meet her burden of proof.
Finally, Ms. King argues that she is entitled to damages for future medical treatment, pain, and suffering. However, because the trial court found the injuries from this accident resolved in November of 2015 and because we have found that determination to be reasonable, this argument is without merit.
DECREE
For the foregoing reasons, we affirm the trial court's judgment.
AFFIRMED

Plaintiff had previously filed a Motion for Partial Summary Judgment on October 21, 2016, seeking the same determination. That motion was denied on January 3, 2017.

The trial court signed a written judgment to that effect on September 22, 2017.