Judge Edwin A. Lombard
Before the Court in these consolidated cases are the cross-appeals of Plaintiff Athena Antippas and the Defendants, Damon Young and Parking Management Services, who seek review of an August 2, 2017 district court judgment, conforming to a jury verdict rendered on June 28, 2017. After review of the record in light of the applicable law and arguments of the parties, we affirm the judgment of the district court, finding no abuse of discretion.
Facts and Procedural History
This is a bicycle-automobile collision case. Ms. Antippas avers that on the afternoon of August 10, 2014, she was cycling on Burgundy Street, in the French Quarter, with three to four feet of space between both her and the parked cars on the right side of the road as well as the passing vehicular traffic to her left. Cycling with the flow of traffic, Ms. Antippas was struck by a car door that valet Damon Young[1] had partially opened in front of the Hotel St. Pierre.[2] Ms. Antippas testified that she was thrown to the ground upon impact and was helped up by Mr. Young, who apologized to her. Ms. Antippas sustained several injuries, including to her cervical and lumber spine, sacroiliac joints and her right hand, which is her dominant hand. Ms. Antippas testified to these facts at trial, which were stipulated to by the parties.
In 2015, Ms. Antippas filed suit against a number of defendants, including Mr. Young and Parking Management Services. At the time of trial, in June 2017, only Mr. Young and Parking Management Services (collectively referred to as "the Defendants") remained as the Defendants.
A three-day jury trial was held in June 2017, during which four witnesses testified: Ms. Antippas; her orthopedic surgeon, Dr. Marco Rodriguez; Louis Miller, the Parking Management Services manager; and *1216 Douglas Robert, a liability expert.[3] The jury ultimately rendered a verdict finding Ms. Antippas 30% at fault and the Defendants 70% at fault for the accident. The jury awarded Ms. Antippas:
Past Medical Expenses - $ 15,000
Future Medical Expenses - $ 100,000
Past Physical Pain and Suffering - $ 10,000
Future Physical Pain and Suffering - $ 10,000
Past and Future Mental Anguish -$ 5,000
Past and Future Emotional Distress- $ 5,000
Past and Future Loss of Enjoyment of Life - $ 5,000
Thus, her award of $ 150,000 was reduced by $ 45,000, due to her percentage of fault, totaling $ 105,000. The trial court signed a judgment, conforming to the jury verdict, on August 2, 2017. Ms. Antippas later timely appealed this judgment.
Thereafter, the Defendants filed a Motion for Judgment Notwithstanding the Verdict, which the district court denied. Both parties then appealed the district court's August 2017 judgment.[4]
Assignments of Error
On appeal, Ms. Antippas asserts that the jury erred in apportioning her any fault. Moreover, both parties, in their respective appeals, challenge the propriety of the jury's award of past and future medical expenses. Lastly, Ms. Antippas challenges the amount of general damages awarded to her. Below we address the jury's:
• Allocation of fault;
• award of past and future medical expenses; and
• award of general damages.
Allocation of Fault
The jury allocated Ms. Antippas 30% of the fault for the accident at issue. Ms. Antippas maintains that the jury erred for two reasons. First, she asserts she did not deviate from the statutory degree of care required for bicyclists under La. Rev. Stat. 32:197. Second, she maintains that the undisputed facts fail to show any fault on her part to be apportioned, especially considering that the Defendants stipulated to her version of the facts at trial and failed to present testimony or evidence demonstrating that she was partially at fault. While the parties did so stipulate, we find that a reasonable factual basis exists to support the jury's determination that Ms. Antippas was partially at fault for her injuries.
Allocations of fault are factual determinations, which are not to be disturbed by appellate courts in absence of manifest error or unless a particular finding of fact was "clearly wrong." Aetna Life and Casualty Company v. Solloway, 25,462 (La.App.2d Cir. 1/19/94), 630 So.2d 1353, 1356 ; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Allocation of fault is not an exact science, or the search for one precise ratio, but rather an acceptable range. Allocations of fault within such a range cannot be clearly wrong.
*1217 Foley v. Entergy Louisiana, Inc. , 06-0983, p. 32 (La. 11/29/06), 946 So.2d 144, 166 [citations omitted].
The jury, in the instant matter, was presented with testimony from Ms. Antippas that she was traveling equidistant from the passing vehicular traffic to her left and the parked cars to her right, when Mr. Young partially opened a car door into her from her right side. The streets in the French Quarter, according to Mr. Douglas' testimony, are narrower than average streets, measuring 22 feet wide. He further testified that a car door's length, at most, is three feet. Ms. Antippas testified that she was cycling three to four feet away from the parked cars.
It was also established at trial that bicyclists, such as Ms. Antippas, have a statutory duty to travel nearer to the right side of the street. "Every person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction." La. Rev. Stat. 32:197(A) ; Guillot v. Valley Forge Ins. Co., 99-1044, p. 4 (La. App. 3 Cir. 12/8/99), 753 So.2d 891, 894. Bicyclists are also subject to the same duties applicable to drivers of motor vehicles, including the duty to keep a proper lookout at all times. La. Rev. Stat. 32:194 ; Clement v. State Department of Transportation and Development, 528 So.2d 176, 180 (La.App. 1st Cir. 1988).
Ms. Antippas relies upon the Supreme Court's holding that "the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, where the record indicates no sound reason for its rejection." Robertson v. Scanio Produce & Inst. Foods, Inc. , 449 So.2d 459 (La.1984). However, the jurors may have found sound reason for rejection of Ms. Antippas' assertion that she was not at fault based upon her own testimony.[5] Additionally, the jurors had the freedom to "believe in whole or part the testimony of any witness." Pennison v. Carrol , 14-1098, p. 12 (La. App. 1 Cir. 4/24/15), 167 So.3d 1065, 1076.
The jury in this matter clearly determined that Mr. Young failed in his duty to perceive Ms. Antippas' presence. Nevertheless, the jurors could have reasonably concluded that, despite her testimony, Ms. Antippas was travelling nearer toward the right side of the street than she claimed in order for this accident to have occurred. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State of Louisiana, through the Department of Transportation and Development , 617 So.2d 880, 883 (La.1993). Also, while the parties stipulated to the facts, they did not stipulate to fault, which was within the jury's discretion to determine. Finding that the apportionment of fault is not manifestly erroneous or clearly wrong, we uphold the jury's 30% apportionment of fault to Ms. Antippas.
Damages
As stated above, both parties contest the jury's awards of $ 15,000 in past medical expenses and $ 100,000 in future medical expenses.
Ms. Antippas asserts that the jury abused its discretion in awarding past and future medical expenses, which she asserts should be increased to $ 32,812.29 and $ 158,700, respectively. In contrast, the *1218 Defendants aver that the jury erroneously awarded past and future medical expenses for two reasons: 1.) the past and future medical expenses awarded for the alleged injuries of to Ms. Antippas' neck, back, and hips were made in error because she failed to meet her burden of proving these were causally related to the accident; and 2.) the future medical expenses awarded for her hand injury were unsubstantiated due to her alleged failure to establish future medical expenses to a reasonable degree of certainty.
Ms. Antippas was also awarded $ 35,000 in general damages, which she asserts on appeal should be increased to $ 550,000.
Having examined the propriety of each of the aforementioned awards and assessing whether the jury abused its discretion, we conclude that the jury did not abuse its discretion. We discuss each of these awards in turn.
Past Medical Damages
A jury's determination of special damages is entitled to great deference. In order to disturb the jury's award of special damages or to reverse its refusal to award an element of special damages, there must be no factual basis for the jury's determination and the finding must be clearly wrong. See Kaiser v. Hardin , 06-2092, p. 12 (La. 4/11/07), 953 So.2d 802, 810.
A plaintiff bears the burden of proving that his or her injuries are causally related to an accident in order to recover past medical expenses by a preponderance of the evidence. Yohn v. Brandon , 01-1896, p. 6 (La.App. 1 Cir. 9/27/02), 835 So.2d 580, 584 ; Am. Motorist Ins. Co. v. Am. Rent-All, Inc., 579 So.2d 429, 433 (La. 1991). The test to determine if that burden has been met is whether the plaintiff has established through medical testimony that it is more probable than not that the injuries were caused by the accident. Yohn , 01-1896, p. 6, 835 So.2d at 584. "In the absence of bad faith, it is error for the trier of fact to fail to award the full amount of medical expenses that are proven by a preponderance of the evidence that were incurred as a result of an accident." Boxie v. Smith-Ruffin , 07-264, p. 13 (La. App. 5 Cir. 2/6/08), 979 So.2d 539, 548 [citations omitted]. Moreover, plaintiffs who have incurred medical expenses in good faith and evidenced by a bill may recover for said expenses even under circumstances when such treatment could be viewed as unnecessary. Watson v. Hicks , 15-0046, pp. 25-26 (La.App. 4 Cir. 5/27/15), 172 So.3d 655, 675.
A review of this matter, therefore, turns upon the testimony of both Ms. Antippas and Dr. Rodriguez, who was the sole source of medical testimony at trial.
Ms. Antippas
Prior to this accident, Ms. Antippas admitted to suffering from right wrist pain and a June 2014 workout injury where she pulled a muscle. According to her, the pain she experienced before the crash was short term and had resolved prior to the accident at issue.
Ms. Antippas testified that as a result of the accident she sustained several injuries, including the following:
• Disc herniation and annulus tear at the 5/6 and 6/7 levels
• Disc bulges on the lumbar spine at the L-5/S-1 level
• numbness and loss of range of motion in her right long (trigger) finger
• Sacroiliac joint injury and sacroiliitis
• Lumbar and cervical strain
• Inflammation
• Radiating pain from left hip down left leg
• Gluteal muscle pain
• Hip and tailbone pain
*1219 Explaining that her life has not been the same since the accident, Ms. Antippas related that she feels physically weaker than she did prior to the collision and is unable to be as active as she once was. She testified that in the three years following the accident she treated with several medical providers, including chiropractors, an orthopedic surgeon, and physical therapists, seeking relief for her injuries. She continues to suffer with ailments in her spine, hips, legs and right hand.
She testified to receiving an injection in her right hand, which did not relieve her pain, causing her to opt for surgery. The surgery, however, was unsuccessful as it did not completely resolve her issues. She explained that she continues to have a limited range of motion, pain and difficulty performing fine motor functions, such as making her bed and washing dishes. She stated that she may have to have another hand surgery. She further testified that she experiences discomfort with sleeping, as well as walking and sitting for long periods. Lastly, Ms. Antippas explained that while plagued by depression since her youth, she has continued to suffer from depression stemming from the sadness she feels in the change in her life.
Dr. Rodriguez
Dr. Rodriguez was accepted by the trial court as an expert in orthopedic surgery. He testified that he prepared for trial by: reviewing Ms. Antippas' MRIs dated January 2015 and May 2016; meeting with the physician who treated Ms. Antippas' hand, Dr. Eric George; and reviewing Ms. Antippas' medical records, physical therapy and chiropractic records, with the exception of some medical records from Hong Kong related to treatment for her right hand. Dr. Rodriguez testified that Ms. Antippas has continued to receive treatment for her injuries since the day of the accident at issue.
Opining on direct examination that Ms. Antippas suffered injuries to her right hand, cervical and lumbar spine, as well as to her sacrum or sacroiliac joint, Dr. Rodriguez noted that she complained of neck and back pain with radiation into the left buttocks and hip, as well as issues with her right hand, when she initially presented to him for treatment in May 2016. He explained that this visit occurred prior to Ms. Antippas' relocation to Hong Kong for work and that he did not see her again until just prior to trial. According to Dr. Rodriguez, the aforementioned injuries were more probably than not related to the bicycle accident. He further concluded that Ms. Antippas will have to deal with pain for the rest of her life and further that all of her injuries will affect her daily activities for the rest of her life.
Dr. Rodriguez admitted that he did not treat Ms. Antippas for her hand injury. Ms. Antippas, he related, injured her right long or trigger finger, specifically that tendon in her hand was damaged or inflamed causing her coordination, function and stiffness issues. Dr. George initially treated her injury by giving her a hand injection, which was followed by hand surgery to release the pulley connected to the damaged tendon and improve her range of motion. The surgery was unsuccessful; therefore, she received another injection. However, Dr. Rodriguez explained that she still lacks hand function and recommended she undergo a tenolysis procedure. Dr. Rodriguez guessed this procedure would cost a minimum of a $ 30,000 because it is a hospital procedure.
He further testified that he performed a plain x-ray of her cervical spine, which are the top seven bones in the neck. She was diagnosed as having annulus tears at the 5/6 and 6/7 levels on her cervical spine. Dr. Rodriguez recommended cervical epidurals or steroid injections for treatment. He further *1220 testified that her cervical spine is prone to re-injury with two disk herniations with tears for the rest of her life.
Regarding her lumbar spine, Dr. Rodriguez explained that Ms. Antippas has a bulging disk at the L-5/S-1 level. He testified that lumbar spine pain can cause every movement to bother someone, such as bending at the waist, pain with sitting because the disks are more loaded when we sit. Ms. Antippas, he stated, had a facet injection at the L-5/S-1 level in Hong Kong, but the procedure was unsuccessful. He testified that her sciatica pain, sacroiliac pain and lower facet joints on the right side combined are causing pain in her lower back, buttocks and lateral hip.
His review of the chiropractic and physical therapy records of Ms. Antippas indicated back pain and treatment for her lumbar spine injuries. He further testified that her lumbar spine injuries were the source of her buttocks and low back pain, specifically her gluteal muscle pain, sciatic nerve pain and sacroiliac pain, causing pain to radiate on the side of her legs, buttocks, and where her pelvis meets the sacrum. He recommended a medial branch blocking injection[6] to treat her injury at the L-5/S-1 level of her lumbar spine, which would cost $ 3,500. He further testified that more probably than not she would need a surgical endoscopic rhizotomy at the L-5/S-1 level, costing $ 40,000.
Regarding Ms. Antippas sacroiliac joint damage and diagnosis of sacroiliitis, Dr. Rodriguez also opined that Ms. Antippas will have inflammation and pain in the sacrum, the portion of the spine that is in the pelvis, for the rest of her life. Ms. Antippas complained to him of pain in the sacrum and the upper buttocks and lower back radiating around the hip. He identified the cause of her pain as facet joint, disk bulge and nerve irritation and sacroiliac pain. He recommended a sacroiliac joint injection with therapy as treatment. The injection would cost $ 3,000 and can be repeated up to three times a year. Her sacroiliac injury injection, according to Dr. Rodriguez, will require more than one round annually or biannually with therapy for the rest of her life. He further testified that there is possibly a combination of the facet joint and sacroiliac joint causing her left side and hip pain as well as her buttocks pain.
On cross-examination, Dr. Rodriguez was presented with medical records for Ms. Antippas from chiropractor Dr. Theresa Harris dating from March 2014 to August 2014, which he had not reviewed prior to trial. Dr. Harris treated Ms. Antippas before and after the bicycle collision. Based upon his review of those records at trial, Dr. Rodriguez reasoned that the symptoms Ms. Antippas reported before and after the bike accident were similar in the neck, back and hip. Significantly, he noted that those records, showed that Ms. Antippas was suffering from neck, right shoulder, mid-back and bilateral hip pain just weeks prior to the bicycle accident, and that she had been diagnosed with cervical thoracic and lumbar segmental dysfunction, hip, TMJ pain, headaches and right wrist issues. He further testified that Ms. Antippas could have been suffering from a cervical herniation or shoulder issue prior to the bicycle accident.
Lastly, on re-direct, Dr. Rodriguez explained that the post-accident MRIs of Ms. Antippas showed that she had two herniated discs with annulus tears on her cervical spine at the 5/6 and 6/7 levels and disc bulges at the L5-S1 level on her lumbar spine. He testified that prior to the accident *1221 at issue there were no MRIs of her cervical and lumber spine. He also testified that her medical records prior to the crash did not show a diagnosis of inflammation of sacroiliac joints.
Analysis
In the instant matter, the record reveals no allegations or evidence introduced at trial of bad faith on Ms. Antippas' part in receiving medical treatment. Moreover, although the Defendants established at trial that Ms. Antippas suffered from preexisting injuries to her neck, hips and back, Dr. Rodriguez opined that her injuries to those areas were related to and exacerbated by the bicycle collision, and, in addition to her hand injury, were causally linked to the bicycle accident. Any preexisting conditions that Ms. Antippas may have suffered from do not serve to bar her from recovery where she has established that she sustained more injuries.
Having weighed the credibility of the witnesses as well as the conflicting evidence and testimony, the jury clearly found that some of Ms. Antippas injuries and resulting pain were not caused by the accident at issue. We note that with regard to Ms. Antippas' testimony, the jury was not required to fully accept her perception of the degree and magnitude of her injuries. See Phiratsamy v. Pipes , 27,209, p. 4 (La.App.2d Cir. 8/23/95), 660 So.2d 172, 175. There was more than one permissible view of the evidence relating to the nature and causation of the claimed injuries under the facts presented, including that Ms. Antippas had preexisting neck, back and hip conditions prior to being hurt in the accident at issue. Moreover, we note that because defendants take their victims as they are found, defendants are responsible for all natural and probable consequences of their tortious actions. Bryan v. City of New Orleans , 98-1263, pp. 3-4 (La. 1/20/99), 737 So.2d 696, 698.
The $ 15,000 past medical expenses award under these circumstances is consistent with a finding that Ms. Antippas was injured in the accident at issue, but was not entitled to recover all of her requested expenses. In light of this, we cannot disturb the jury's award because it is supported by the record. Thus, we find both the assignments of error of Ms. Antippas and the Defendants, respectively, to be without merit.
Future Medical Expenses
Unlike past medical expenses which can be verified by both bills and testimony, future medical expense awards are "in great measure highly speculative and not susceptible to calculation with mathematical certainty." Menard v. Lafayette Ins. Co., 09-1869, p. 13 (La. 3/16/10), 31 So.3d 996, 1006. A plaintiff is required to establish that future expenses will, more probably than not, be medically necessary. Id. Future medical expenses must be established with some degree of certainty, including supporting medical testimony and estimations of the probable cost of the medical expenses. Duncan v. Kansas City S. Ry. Co. , 00-0066, p. 17 (La. 10/30/00), 773 So.2d 670, 685. However, the effect and weight to be given medical expert testimony is within the broad discretion of the fact finder, who may accept or reject, in whole or in part, the opinions expressed by an expert. Yohn , 01-1896 at p. 7, 835 So.2d at 584 ; Harris v. State, Department of Transportation and Development , 07-1566, p. 25 (La.App. 1 Cir. 11/10/08), 997 So.2d 849, 866.
In the matter sub judice , as stated above, the jury was presented with medical testimony solely from Dr. Rodriguez. He testified that Ms. Antippas would need future medial branch blocks treatments for her spine for the rest of her life, physical therapy, surgical endoscopic *1222 rhizotomy and sacroiliac joint injections bi-annually for the rest of her life as well as another hand surgery and hand therapy. The jury clearly found his testimony compelling as it awarded Ms. Antippas $ 100,000 in damages.
The Defendants argue on appeal that because Dr. Rodriguez guessed as to the cost of Ms. Antippas' future hand procedures, at $ 30,000, that her award should be reduced by this allegedly excessive amount. However, the record provides no insight as to whether the jurors actually opted to compensate Ms. Antippas based upon his estimate.
Moreover, given the highly speculative nature of future medical expenses and the vast discretion afforded to the jury, we cannot say that the amount awarded is unreasonable or disproportionate, as Ms. Antippas asserts, nor excessive, as the Defendant's maintain. The proper procedure for examining whether an award is excessive is to determine whether the amount can be supported under the interpretation of the evidence, most favorable to the plaintiff, which reasonably could have been made by the trier of fact. Locke v. Young , 42,703, p. 18 (La. App. 2 Cir. 12/12/07), 973 So.2d 831, 843 (citing Manuel v. State Farm Mutual Automobile Company , 30,765 (La.App.2d Cir. 8/19/98), 717 So.2d 277 ). Based upon Dr. Rodriguez's testimony as to the various procedures and therapy Ms. Antippas will need in the future, we find that this award is supported by the record and, therefore, not excessive, when viewed in the light most favorable to Ms. Antippas. Therefore we find the respective assignments of error of the parties to be without merit.
General Damages
As previously noted, the jury awarded Ms. Antippas $ 35,000 in general damages in the following amounts:
Past Physical Pain and Suffering - $ 10,000
Future Physical Pain and Suffering - $ 10,000
Past and Future Mental Anguish -$ 5,000
Past and Future Emotional Distress- $ 5,000
Past and Future Loss of Enjoyment of Life - $ 5,000
Ms. Antippas asserts that this award is grossly inadequate, claiming that $ 550,000 is the damage amount that is warranted under the facts of this case. We disagree.
General damages, which "involve mental and physical pain and suffering, inconvenience, loss of intellectual gratification of physical enjoyment, and other losses of lifestyle that cannot be definitively measured in monetary terms," are "speculative in nature and cannot be fixed with mathematical certainty." Waters v. Oliver , 16-1262, p. 18 (La. App. 4 Cir. 6/22/17), 223 So.3d 37, 49 [citations omitted]. The factors to be considered in assessing quantum for pain and suffering are severity and duration. Simon v. Reel , 03-0932, p. 6 (La. App. 3 Cir. 3/3/04), 867 So.2d 174, 178-79 (citing Glasper v. Henry , 589 So.2d 1173 (La.App. 4 Cir. 1991). Additionally, " 'loss of enjoyment of life ... refers to detrimental alterations of the person's life or lifestyle or the person's inability to participate in the activities or pleasures of life that were formerly enjoyed' prior to the injury." McGee v. A C and S, Inc., 05-1036, p. 3 (La. 7/10/06), 933 So.2d 770, 773. Unlike pain and suffering, "whether or not a plaintiff experiences a detrimental lifestyle change depends on both the nature and severity of the injury and the lifestyle of the plaintiff prior to the injury." Id. , 05-1036, p. 5, 933 So.2d at 775.
*1223 General damage awards are reviewed under an abuse of discretion standard because the trier of fact is in the best position to evaluate witness credibility and see the evidence firsthand. See Duncan , 00-66, pp. 13-14, 773 So.2d at 682-83. "An appellate court may not overturn an award for general damages unless it is so out of proportion to the injury that it shocks the conscience." Lee v. Lu , 05-899, p. 9 (La. App. 5 Cir. 4/11/06), 931 So.2d 365, 371 [citation omitted].
In the instant matter, as previously stated, the jury heard and considered the testimony of Ms. Antippas and Dr. Rodriguez about the injuries she sustained and that pain for the rest of her life. Although a different trier of fact may have awarded Ms. Antippas more in general damages, we do not find that the amount awarded is so disproportionate that it shocks the conscience, especially because we do not know how credible the jury found the witnesses to be with regard to this issue. Thus, we affirm the award of general damages and find that this assignment of error is without merit.
DECREE
In consideration of this consolidated matter and the cross-appeals of Plaintiff Athena Antippas and the Defendants, Damon Young and Parking Management Services, we affirm the August 2, 2017 judgment of the district court for the foregoing reasons.
AFFIRMED
LEDET, J., CONCURS IN THE RESULT

Mr. Young is also known as Damon Barre.

Ms. Antippas further testified that the driver of a Ford Mustang passed her, on her left side, when the accident at issue occurred.

Mr. Robert was retained as an expert by Ms. Antippas, but was called to testify by the Defendants.

Ms. Antippas is the appellant in two of the three consolidated appeals, 2017-CA-0798 and 2018-CA-0468, while the Defendants are the Appellants in the second-filed appeal, 2018-CA-0397. Concerned that her first Motion for Devolutive Appeal was premature and thus did not properly trigger an appeal, Ms. Antippas filed the second Motion and Order for Devolutive appeal out of an abundance of caution. The parties filed a Joint Motion to Consolidate in this Court, which was granted on October 11, 2018.

Furthermore, the record reflects that some of Ms. Antippas' medical records that were accepted as exhibits at trial-specifically patient intake forms-stated that she cycled into an open car door.

He later testified that a medial branch block is a confirmatory or diagnostic tool that determines if the facet joints are a problem, and, thus, that there is no confirmed diagnosis.